# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1964V
UNPUBLISHED

| | |
|---|---|
| ALEXANDRA MORROW,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 2, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Martin James Martinez*, Martinez Law Office, Napa, CA, for Petitioner.

*Robert Paul Coleman, III*, U.S. Department of Justice, Washington, DC, for Respondent.

## **FINDINGS OF FACT**[1]

On December 18, 2017, Alexandra Morrow filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccination administered on January 24, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA began within the temporal requirements of the Table claim, because Petitioner suffered pain the same day as her vaccination.

## I.     Relevant Procedural History

On September 3, 2019, Respondent filed a Rule 4(c) Report recommending that compensation be denied in this case. Respondent's Rule 4(c) Report ("Respondent's Report") ECF No. 44. Respondent's position was based in part on his conclusion that there is not preponderant evidence that onset of Petitioner's pain was within 48 hours of vaccination. *Id.* at 4. Respondent also argued that there may be additional explanations for Petitioner's left shoulder pain, such as degenerative changes to her shoulder and employment-related activities. *Id.* at 5.

Petitioner filed a Motion for Ruling on the Record ("Mot.") arguing that there is preponderant evidence that she suffered a shoulder injury within 48 hours of the vaccination. ECF No. 48. Petitioner also moved for a ruling on entitlement in her favor. Mot. at 27. Respondent did not file a response.

## II.    Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which

2

are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Finding of Fact

I make the findings after a complete review of the record to include all medical records, affidavits, Respondent's Report, and additional evidence filed. Specifically, I base the findings on the following evidence:

- On January 24, 2017, Ms. Morrow received the flu vaccine in her left shoulder. Ex. 19 at 17.[3]

- On February 21, 2017, Petitioner reported pain in her left shoulder that began after receiving vaccinations on January 24, 2017. Ex. 19 at 6-7. During that visit, Petitioner indicated that her pain started "a few days after [the vaccinations on January 24, 2017] and has become progressively worse." Ex. 19 at 7-8.

- Petitioner repeatedly attributed her pain to vaccinations received on January 24, 2017, and repeatedly reported the pain began "a few days after and has become progressively worse." *See* Ex. 19 at 8 (record from March 14, 2017 reporting left shoulder pain after receiving vaccines on January 24, 2017); Ex. 19 at 10 (record from May 17, 2017 reporting left shoulder pain after receiving vaccines on January 24, 2017).

- Petitioner underwent an MRI of her left shoulder on May 30, 2017, due to "[l]eft shoulder pain since February, 2017, post flu shot[]." Ex. 15 at 1.

- On June 30, 2017, Petitioner reported that her shoulder pain began after receiving two vaccinations approximately five months earlier. Ex. 24 at 1. Petitioner also stated that she developed soreness in her shoulder the night she received the flu vaccine, and that she woke the following day with limited mobility. Ex. 24 at 1.

The above medical entries collectively establish that Petitioner's shoulder pain most likely began within hours of receiving the January 24, 2017 flu vaccine, and progressively increased thereafter.

      I recognize that some of Ms. Morrow's records are unclear, or indicate the onset of her shoulder pain may have occurred later than 48 hours after the vaccine. Specifically, as Respondent notes in his Rule 4 Report, at times Petitioner reported that her pain began "a few days after" receiving the vaccines. Ex. 19 at 7-8. Further, some records indicate that her pain began in February, more than one week after her flu vaccine. *See* Ex. 6 at 1-5 (record stating her left shoulder pain began February 1, 2017). However, while every record may not be consistent, when the evidence is viewed in its entirety it preponderantly establishes that Petitioner's likely pain began within 24 hours of her vaccination.

      Accordingly, I find there is preponderant evidence to establish that the onset of Petitioner's pain occurred the same day as her January 24, 2017 vaccination – and thus within the 48-hour timeframe for a Table SIRVA claim.

      At this time, I decline to rule on entitlement to allow the parties an opportunity to discuss how they would like to proceed in this case, and to determine whether settlement negotiations would be productive.

---

[3] Petitioner also received a Pneumococcal polyvalent vaccination Pneumovax®23 in her left shoulder at that time.

## V. Scheduling Order

Accordingly, the following is ORDERED:  **Respondent shall file, by no later than Friday, July 03, 2020, a status report indicating how he intends to proceed in this case**. At a minimum, the status report shall indicate whether Respondent is willing to engage in tentative discussions regarding settlement or proffer or is opposed to negotiating at this time.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
